**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JAMES MCGUIRE, as**
**SPECIAL ADMINISTRATOR**
**OF THE ESTATE OF**
**DONALD R. MCGUIRE, DECEASED**                                                    **PLAINTIFF**

**v.**                            **CASE NO.** 5:21-cv-05096-TLB

**UNITED STATES OF AMERICA**                                                        **DEFENDANT**

---

## COMPLAINT

---

COMES NOW, the Plaintiff James McGuire, as Special Administrator of the Estate of Donald R. McGuire, Deceased, by and through his undersigned counsel, states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      At all relevant times herein, Donald R. McGuire, deceased, was a resident of the State of Arkansas, residing in Bella Vista, Benton County, Arkansas.

2.      James McGuire is the Special Administrator of the Estate of Donald R. McGuire, Deceased, having been appointed by the Probate Division of the Circuit Court of Benton County, Arkansas on April 8, 2020.  A copy of the Letters of Special Administration issued by the Benton County Clerk is attached hereto as "Exhibit A."

3.      The Veterans Health Care System of the Ozarks ("Fayetteville VA" hereinafter) is operated by the Veterans Health Administration of the United States Department of Veterans Affairs, a department within the executive branch of the United States government.

1

4.      The Fayetteville VA operates as a medical center that provides veterans with inpatient and outpatient medical care, including primary care, mental health care, surgical, dental, optometric, chiropractic, preventive health, non-institutional extended care, medical devices, and medical-related incidentals for veterans in twenty-three counties in Northwest Arkansas, Southwest Missouri, and Eastern Oklahoma.

5.      The Fayetteville VA is located at 1100 North College Avenue in Fayetteville, Arkansas, within the territorial jurisdiction of the Western District of Arkansas, Fayetteville Division.

6.      By virtue of his service in the United States military, Mr. McGuire was eligible to and did receive care through the United States Department of Veterans Affairs.

7.      This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* against the United States of America.  Mr. McGuire's personal injuries, and ultimate death, were proximately caused by the negligence, medical malpractice, wrongful acts and/or omissions of employees of the Fayetteville VA while acting in the course and scope of their employment.

8.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(b).

9.      Venue is proper herein pursuant to 28 U.S.C. § 1402 because this is a civil action involving claims against the United States, and the acts and omissions giving rise to the claim occurred in the Western District of Arkansas.

10.     Additionally, at all times referred to herein, Defendant, its agencies, employees, and agents were acting under the color of state and federal law, statutes, ordinances, regulations, policies, customs, practices, and usages of the United States of America, pursuant to their authority thereunder.

## FACTUAL ALLEGATIONS

11.     Donald R. McGuire was a patient at the Fayetteville VA.  In January 2009, Mr. McGuire's primary care physician became concerned when Mr. McGuire presented with elevated prostate-specific antigen ("PSA") levels.  At the direction of his treating physician, Mr. McGuire underwent a prostate needle biopsy to determine the cause of his elevated PSA levels.  Pathology materials related to the biopsy were sent to Dr. Robert Morris Levy for examination and diagnosis.

12.     Dr. Levy was a board-certified anatomic and clinical pathologist and a board-certified hematologist.  Dr. Levy was issued a medical license number by the Mississippi State Board of Medical Licensure in 1997 and, at various times, also held medical licenses in California, Florida, and Louisiana.

13.     In 2005, the Fayetteville VA hired Dr. Levy as the Service Chief of Pathology and Laboratory Medicine Services.  At all relevant times, Dr. Levy was an employee of the United States Department of Veterans Affairs, the Fayetteville VA, and the acts and/or omissions giving rise to these allegations occurred while Dr. Levy was acting within the course and scope of his office and employment.

14.     Dr. Levy's duties as Service Chief of Pathology and Laboratory Medicine Services at the Fayetteville VA included, but were not limited to, rendering diagnoses after examining fluid and tissue samples obtained from Fayetteville VA patients; entering information into patients' medical records; assisting radiologists, surgeons, and others during needle biopsies; ensuring that quality standards were maintained for anatomical and clinic laboratory studies; and reporting errors that occurred at the Fayetteville VA pathology laboratory.  Dr. Levy also chaired the tumor board and served on various oversight boards and medical committees at the Fayetteville VA.  He

3

was responsible for ensuring the compliance of the pathology department with the protocols and procedures of national laboratory and hospital accreditation agencies.

15.    Doctors and other medical providers at the Fayetteville VA reasonably relied upon the accuracy of the diagnoses made by Dr. Levy and the integrity of the information he entered in patients' medical records which largely influenced decisions about the course of medical treatment for Fayetteville VA patients.

16.    During Dr. Levy's employment at the Fayetteville VA, Dr. Levy abused drugs and alcohol, being regularly intoxicated while providing medical services to VA patients in the course and scope of his employment.   Dr. Levy concealed being under the influences of alcohol by routinely ingesting 2-methyl-2-butanol, which masked the alcohol in his blood during routine drug and alcohol tests administered by the Fayetteville VA to its employees.

17.    Oftentimes, while under the influence of drugs and alcohol in the course and scope of Dr. Levy's employment with the Fayetteville VA, he exhibited obvious signs of inebriation that were or should have been readily apparent to those around him, including fellow employees at Fayetteville VA.   At various times, witnesses reported seeing Dr. Levy drinking in his car in the Fayetteville VA parking lot, "smelling like alcohol," and finding a cup containing alcohol next to a microscope.  *See* Transcript of Sentencing Hearing at 97:22-98:1; 100:4-9, United States v. Robert Morris Levy, No. 5:19-CR-50059 (W.D. Ark. Jan. 21-22, 2021) ["Sentencing Transcript" hereinafter] (attached hereto as "Exhibit B").

18.    On or around February 11, 2009, Dr. Levy reviewed Mr. McGuire's pathology materials and found the biopsy negative for prostate cancer.  Dr. Levy then falsified an entry in Mr. McGuire's medical records by stating that a second pathologist had concurred in Dr. Levy's diagnosis of Mr. McGuire.

19.     Dr. Margie Scott, the Medical Center Director at the Central Arkansas Veterans Health Care System, testified during Dr. Levy's criminal sentencing hearing that, when a lookback team re-examined the pathology materials taken from Mr. McGuire, it was "very clear that the [previous] biopsy contained prostate cancer." Sentencing Transcript, at 151:17-24. She indicated that Mr. McGuire's case was "extremely easy to identify" and that "the tumor cells were very obvious," such that she would expect a first-year pathology resident to detect them. Sentencing Transcript, at 152:21-153:9; 244:3-9. Further, the Superseding Indictment against Dr. Levy for the involuntary manslaughter of Mr. McGuire noted that Dr. Levy found Mr. McGuire's biopsy negative for cancer when Mr. McGuire's "prostatic tissue was obviously cancerous." *See* Superseding Indictment at 14-15, United States v. Robert Morris Levy, No. 5:19CR50059-001 (W.D. Ark. Aug. 16, 2019) ["Superseding Indictment" hereinafter] (attached hereto as "Exhibit C").

20.     This diagnostic error was a level 3 misdiagnosis that resulted in a five-year and seven-month delay in the diagnosis and treatment of Mr. McGuire for prostate cancer.

21.     On or around September 26, 2014, a prostate biopsy revealed a diagnosis of prostatic adenocarcinoma. Subsequent medical examinations and tests revealed that Mr. McGuire's delayed diagnosis of prostate cancer resulted in widespread bone metastasis.

22.     Donald R. McGuire passed away on April 28, 2016.

23.     On or about August 2018, the family of Mr. McGuire was notified by the Fayetteville VA that Dr. Levy's diagnosis was incorrect and that his erroneous pathology report had been modified to show the presence of Carcinoma.

24.     The U.S. Department of Veterans' Affairs as a whole and VA employees at the Fayetteville VA had actual knowledge that Dr. Levy was routinely impaired while he was

practicing medicine at the Fayetteville facility and in spite of this knowledge permitted Dr. Levy to continue practicing medicine.

25.     On June 1, 2020, Levy entered a plea agreement admitting to mail fraud and involuntary manslaughter.  In the plea agreement, Levy admits to being intoxicated at work, obtaining 2-Methyl-2-Butanol to obtain the effects of alcohol without a positive test, falsifying documents, and failing to execute proper workups on patient specimens in the scope of his employment. *See* Plea Agreement at 4-7, United States v. Robert Morris Levy, No. 5:19CR50059-001 (W.D. Ark. June 1, 2020) ["Plea Agreement" hereinafter] (attached hereto as "Exhibit D").

## JURISDICTIONAL PREREQUISITES

26.     All procedural prerequisites to filing this action, have been satisfied, met, or otherwise waived, including the exhaustion of all administrative remedies under the Federal Tort Claims Act (FTCA).

27.     On or about May 7, 2020, Plaintiff submitted its administrative claims for damage, injury, and death under the FTCA to the Fayetteville VA and Defendant.

28.     Claim forms were filed on behalf of Donald R. McGuire by James McGuire, as Administrator of Donald R. McGuire's Estate.   The Standard Form 95 is attached to this Complaint as "Exhibit E" and incorporated herein by reference.

29.     Pursuant to 28 U.S.C. § 2675(a), no denial of the claim or settlement has been reached as of the date of filing this Complaint and therefore the administrative claim may be considered denied for the purpose of filing this pleading.

## COUNT I: MEDICAL MALPRACTICE

30.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth verbatim herein.

31.     The acts and/or omissions of the agents and/or employees of Defendant, through its agency with the Fayetteville VA, in failing to properly diagnose Mr. McGuire and falsifying Mr. McGuire's medical records, constitute medical malpractice.

32.     Through the employees and/or agents of Fayetteville VA, Defendant is guilty of negligence which was the proximate cause of the injuries and damages, including, ultimately, death, sustained by Mr. McGuire.

33.     In its treatment of Mr. McGuire, the Defendant, through its agents and/or employees, grossly failed to meet the applicable standard of care for medical providers in similar localities under similar circumstances.  Dr. Margie Scott noted, "Dr. Levy, had he looked at the slide, should have very easily picked up on the fact that cancer was present on the slide.  It was present in more than one location on the slide.  And his lack of diagnosing or looking at that slide closely enough to make that diagnosis was, in my opinion, very reckless."  Sentencing Hearing, at 153:19-154:6.

34.     Defendant and its agents and/or employees breached the duty they owed to Mr. McGuire, and this negligence deviated from the standard of care required for medical providers under these circumstances.  The negligence consisted of, but is not limited to, the following:

       a.  Defendant's conduct and that of its agents and/or employees fell below the standard of care required for similar medical providers in places similar to Fayetteville, Arkansas, and constitutes medical malpractice.

       b.  Defendant and its agents and/or employees failed to properly diagnose Mr. McGuire and failed to possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of their professions in good standing, engaged in the same type of specialty in the locality in which they practiced, or in a similar locality.

       c.  Defendant and its agents and/or employees were negligent in the hiring, retention, and supervision of Dr. Levy in light of his history of alcohol and substance abuse.

7

      d.  Defendant and its agents and/or employees failed to properly review and follow up on Mr. McGuire's diagnosis.

      e.  Defendant and its agents and/or employees falsified medical records relating to Mr. McGuire's diagnosis.

      f.  Defendant and its agents and/or employees are otherwise guilty of negligence which will be more particularly described during the course of litigation.

35.    In rendering medical services, examinations, treatments, diagnoses and medical care for Mr. McGuire, the Defendant, through its agents and/or employees, failed to exercise the degree of skill and care that would be expected of an ordinarily prudent and competent healthcare provider under similar circumstances.

36.    As a result of Defendant's failure, and through its agents and/or employees in rendering medical services, examinations, treatments, and diagnoses, Mr. McGuire suffered severe injury and, ultimately, death.

37.    Further, the U.S. Department of Veterans' Affairs, including the Fayetteville VA, incentivized medical personnel, including Dr. Levy, to report a clinical error rate of less than five percent in exchange for monetary performance bonuses. Defendants failed to put in place adequate measures to ensure that the error rates reported by medical personnel were accurate. Dr. Levy repeatedly reported to the Fayetteville VA that his error rate was below five percent – reporting during some years that he had a zero percent error rate – to receive such bonuses. In reality, Dr. Levy's error rate at the Fayetteville VA was 9.98 percent. This error rate included at least 586 level 3 misdiagnoses, which are those with "major discrepancy in diagnosis that could possibly or potentially lead to complications or damage in their health care." Sentencing Transcript, at 42:5-9. Dr. Levy was noted as an individual "who took shortcuts, who did not work up cases completely, who did not submit as many tissue sections from large major surgical cases that [he] should have, who did not follow through with the appropriate workup." Sentencing Transcript, at

137:4-23. Despite this, Dr. Levy received twenty-five percent of his performance bonus for reporting an error rate of less than five percent, largely due to the Fayetteville VA's failure to establish adequate safeguards that could ensure the validity of the reported error rate.

38.     As a result of the Defendant's systemic failures, Dr. Levy was able to "create[] [his] own rules in how [he] w[as] going to operate and perform [his] duties as a pathologist" at the Fayetteville VA. Sentencing Transcript, at 137:15-23. Ultimately, during Dr. Levy's time at the Fayetteville VA, his "cases were not worked up completely. Diagnoses were rendered on insufficient information. And some of the errors [we]re just astounding that anybody would look at a slide and even consider the diagnosis that was put into the medical record." Sentencing Transcript, at 137:24-138:3.

39.     Even if the Defendant never discovered that Dr. Levy was intoxicated while practicing medicine, the errors that were brought to the Defendant's attention by the Fayetteville VA's deputy pathologist, Dr. Paul Hendrycy, was enough that the Defendant knew or should have known a major problem existed at the Fayetteville VA regarding the medical care that was being rendered due to improper diagnoses, inappropriate procedures, and understaffing in the pathology department.

40.     Each of these negligent acts and/or omissions by Defendant, singularly and/or in combination, proximately caused the injuries and ultimate death of Mr. McGuire.

41.     As a direct and proximate result of Defendant's negligence:

a.   Donald R. McGuire was required to seek and obtain additional medical treatment, incurring substantial medical expenses as a result thereof.

b.   Donald R. McGuire's enjoyment of life was impaired, and his life span was greatly shortened.

c.   Plaintiff further alleges damages for loss of life pursuant to Ark. Code Ann. § 16-62-101(b).

d.  Donald R. McGuire did not receive appropriate care for and/or treatment and sustained serious injuries as a result.

e.  Donald R. McGuire suffered great pain and mental anguish as a direct result of the aforementioned injuries.

## COUNT II: WRONGFUL DEATH

42.  Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth verbatim herein.

43.  As a direct and proximate result of Defendant's acts and/or omissions, Defendant caused the death of Mr. McGuire.

44.  On August 16, 2019, a Grand Jury in the Western District of Arkansas, Fayetteville Division, indicted Dr. Levy, who acted as an agent and/or employee of the United States, for involuntary manslaughter in the death of Mr. McGuire.  Pursuant to 18 U.S.C. § 1112, the indictment alleged that Dr. Levy caused the death of Mr. McGuire in "the commission of a lawful act which might produce death, done with wanton and reckless disregard for human life, knowing of circumstances that would reasonably cause [Dr. Levy] to foresee that his conduct might be a threat to the life" of Mr. McGuire. *See* Superseding Indictment at 14-15, United States v. Robert Morris Levy, No. 5:19CR50059-001 (W.D. Ark. Aug. 16, 2019).

45.  Plaintiff prays for compensatory damages against Defendant for the wrongful death of Donald R. McGuire.  James McGuire, as Special Administrator of the Estate of Donald R. McGuire, Deceased, is entitled to damages on behalf of the Estate of the reasonable value of funeral expenses; conscious pain and suffering of Donald R. McGuire prior to his death; medical expenses attributable to his injuries and subsequent death; loss of enjoyment of life; and loss of life for Donald R. McGuire all in an amount in excess of that required by federal jurisdiction in diversity of citizenship cases.

46.     Further, as a proximate result of the conduct of Defendant as more specifically alleged herein, the following statutory beneficiaries of the Estate of Donald R. McGuire suffered mental anguish and continue to suffer mental anguish in the future as a proximate result of the death of Donald R. McGuire.  Said beneficiary being James McGuire.  Plaintiff sues for pecuniary injuries sustained by the beneficiaries, together with mental anguish on behalf of the beneficiaries, under Ark. Code Ann. § 16-62-102.

WHEREFORE, Plaintiff prays that the Defendant be ordered to appear and answer the Complaint herein; that upon final trial of this action that Plaintiff be granted judgment against Defendant for his damages, in an amount in excess of that required for jurisdiction for compensation of medical expenses, conscious pain and suffering, loss of life, and mental anguish of the statutory beneficiaries; that Plaintiff recovers costs of suit herein expended and interest and the legal rate on all of the above; and that Plaintiff be awarded such other and further relief, both at law and at equity, to which this Court, in its discretion, may find him to be justly entitled.

Respectfully submitted,

JAMES MCGUIRE, as SPECIAL ADMINISTRATOR OF THE ESTATE OF DONALD R. MCGUIRE, DECEASED, PLAINTIFF

By:

Monte Sharits, Ark. Bar No. 10137
Alan L. Lane, Ark. Bar No. 2003131
Matthew L. Lindsay Ark. Bar No 2004028
ODOM LAW FIRM, P.A.
161 W. Van Asche Loop, Suite 1
(479) 442-7575
(479) 442-9008 *fax*
msharits@odomfirm.com